UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE MATTHEWS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 7582 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| TERENCE HUGHES, in his individual and official capacity as Chief of the Fire Department of the Village of Dolton, Illinois, VILLAGE OF DOLTON, ILLINOIS, a unit of local government, BOARD OF POLICE AND FIRE COMMISSIONERS OF THE VILLAGE OF DOLTON, ILLINOIS, an administrative agency within the Village of Dolton, DAVID DUVALL, in his individual and official capacity as the President of the Dolton Professional Firefighters Association, I.A.F.F., Local 3766, and DOLTON PROFESSIONAL FIREFIGHTERS ASSOCIATION, I.A.F.F., LOCAL 3766, a labor organization, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lawrence Matthews brought this suit against the Village of Dolton, the Village's Board of Police and Fire Commissioners, Dolton Fire Chief Terence Hughes, the Dolton Professional Firefighters Association, Local 3766, and Local 3766 President David DuVall, alleging that they conspired to and did violate federal and state law in connection with his termination. Doc. 10. DuVall and Local 3766 (together, "Union Defendants") have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the Village, the Board, and Hughes (collectively, "Village Defendants") have moved to dismiss under Rule 12(b)(6). Docs. 23, 35. The motions are granted in part and denied in part.

**Background**

On a facial challenge to subject matter jurisdiction under Rule 12(b)(1), as on a Rule 12(b)(6) motion, the court must accept as true the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Matthews's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Matthews's brief opposing dismissal, so long as those additional facts are "consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Matthews as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

The Village is a municipality in Illinois. Doc. 10 at ¶ 6. The Board is an administrative agency of the Village. *Id*. at ¶ 7. Hughes is the Chief of the Village's Fire Department. *Id*. at ¶ 5. Local 3766 is the exclusive collective bargaining agent for the Village's firefighters. *Id*. at ¶ 9. There was a collective bargaining agreement ("CBA") between Local 3766 and the Village, *id*. at ¶¶ 42-43, 78-79, 81-82; Doc. 37-1 at 2-59, but the parties dispute whether it was in effect when Matthews was terminated, Doc. 43 at 1, 4; Doc. 48 at 1. DuVall is the president of Local 3766. Doc. 10 at ¶ 8.

In September 2009, the Village hired Matthews, an African-American male, as a firefighter. *Id*. at ¶ 10. A co-worker named Hughes would regularly direct racial slurs at African-American firefighters, including Matthews, and would question their qualifications. *Id*. at ¶¶ 12, 17-18. In March 2013, the Village's mayor appointed Hughes as Fire Chief, and soon

thereafter Hughes fired two African-American firefighters. *Id*. at ¶¶ 19-21. That summer, Hughes filed a complaint with the Cook County Sheriff alleging that Matthews had falsified overtime work reports under the previous chief. *Id*. at ¶ 24. As a result, Matthews was arrested at his home, though the charges eventually were dismissed. *Id*. at ¶ 25.

Matthews later received a Notice of Interrogation from Hughes directing him to appear for questioning to determine whether he had participated in a scheme to log extra overtime. *Id*. at ¶ 26. Although the notice informed Matthews that he could have a union representative present at the interrogation, when the time came, he was denied a representative. *Id*. at ¶¶ 26, 29. Shortly after the interrogation, Hughes terminated Matthews. *Id*. at ¶ 30.

When Matthews asked Local 3766 to appoint him a lawyer, the union told him it had to conduct a hearing to decide whether it would take his case. *Id*. at ¶ 32. Local 3766 initially submitted grievance forms on Matthews's behalf, but later dismissed his demand for arbitration. *Id*. at ¶ 33. Matthews sought review of his termination from the Board, which dismissed his case on August 14, 2014. *Id*. at ¶ 36.

Matthews filed a charge with the Equal Employment Opportunity Commission ("EEOC") complaining of race and disability discrimination. *Id*. at ¶ 34. The EEOC issued him a right-to-sue letter on June 5, 2014. *Id*. at ¶ 35. Matthews filed a charge with the Illinois Labor Relations Board against DuVall and Local 3766 on October 22, 2014. *Id*. at ¶ 37.

In this suit, Matthews alleges a deprivation of property without due process under 42 U.S.C. § 1983 and 65 ILCS 5/10-2.1-17 against Hughes (Count I), the Village (Count III), the Board (Count IV), and DuVall and Local 3766 (Count V). Doc. 10 at ¶¶ 45-53, 57-81. Matthews further alleges that Hughes discriminated against him on account of his race in violation of 42 U.S.C. § 1981 and the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5 (Count

II), and that all five defendants conspired to deprive him of his property in violation of 42 U.S.C. § 1985(3) (Count V). Doc. 10 at ¶¶ 54-56, 82. Finally, Matthews alleges that DuVall and Local 3766 breached their duty of fair representation to him (Count V). *Id*. at ¶¶ 77-81.

## Discussion

Defendants move under Rules 12(b)(1) and 12(b)(6) to dismiss all of Matthews's claims.

### I. Conspiracy Claim

Defendants argue that Matthews has failed to state a § 1985(3) conspiracy claim. Doc. 25 at 8-12; Doc. 36 at 7-8. There is no heightened pleading standard for conspiracy claims: "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). That rule has survived *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy."); *Cooney v. Rossiter*, 583 F.3d 967, 970-71 (7th Cir. 2009) (discussing *Twombly*/*Iqbal* and approvingly citing *Walker* for the pleading standard in conspiracy cases).

The operative complaint alleges a "collusive conspiracy of Local 3766 with Hughes, the Village, and the Board to circumvent the provisions of the pertinent statutes, ordinances and provisions of the Redbook and the Collective Bargaining Agreement in favor of a sham, empty, unrealized and aborted 'grievance' process [that] deprived the Plaintiff of his property right and interest in maintaining and continuing his employment." Doc. 10 at ¶ 82. Consistent with *Walker*, this allegation identifies the parties to the conspiracy (Local 3766, Hughes, the Village,

4

and the Board), its general purpose (to deprive Matthews of any meaningful process to contest his termination), and its approximate timeline (the period surrounding his termination).

The Union Defendants retort that a § 1985(3) conspiracy can be based only on a denial of equal protection, not on a denial of due process. Doc. 25 at 11. That proposition is correct. Section 1985(3) creates a civil damages action against two or more persons who "conspire … for the purpose of depriving" the plaintiff of "the equal protection of the laws" and who take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3). Consistent with the statutory text, settled precedent holds that "a complaint under § 1985(3) must allege a conspiracy motivated by a racial or other class-based animus." *Kyle v. Morton High Sch.*, 144 F.3d 448, 457 (7th Cir. 1998); *see also Westbrook v. Barclay Court Reporters*, 591 F. App'x 514, 514 (7th Cir. 2015) ("Westbrook has not stated a claim under § 1985(3) because his complaint does not allege any racial or class-based motive for the defendants' actions."); *Xiong v. Wagner*, 700 F.3d 282, 297 (7th Cir. 2012) ("As discussed, plaintiffs have not made a showing sufficient to establish the existence of racial animus on the part of defendants. Accordingly, plaintiffs' conspiracy claim falls with their equal protection claim, and summary judgment in defendants' favor is appropriate.").

But the operative complaint pleads facts suggesting that the alleged conspirators' conduct was racially motivated. Doc. 10 at ¶¶ 2, 18, 20-22, 55-56. In particular, it alleges that "[t]he conduct and actions of Hughes were informed and motivated by animus and bias against the Plaintiff with whom [Hughes] conspired with Local 3766 to impair and deprive the Plaintiff of his property rights on the basis of Plaintiff's race," *id*. at ¶ 56, and that "Local 3766 operated herein as an agent of Hughes by intentionally reflecting and assuming the latter's bias, animus, and discriminatory intent toward the Plaintiff," *id*. at ¶ 80. These allegations elaborate on the

5

conspiracy's purpose—to deprive Matthews, *due to his race*, of his job and of any meaningful way to challenge his termination. Although the complaint itself does not list DuVall a party to the conspiracy, Matthews's brief opposing dismissal does: "Defendant Hughes as firechief, entered into a conspiracy with … David DuValle, president of Local 3766 to oust plaintiff from his employment." Doc. 43 at 5. That is permitted on a Rule 12(b)(6) motion. *See Phillips*, 714 F.3d at 1020. Accordingly, Matthews has pleaded a viable § 1985(3) claim against all Defendants. *See Maglaya v. Kumiga*, 2015 WL 4624884, at *12-13 (N.D. Ill. Aug. 3, 2015) (denying dismissal of a § 1985(3) claim where the plaintiff alleged the conspiracy's parties, general purpose, and time frame, and also that the conspirators acted with the purpose of denying the plaintiff equal protection).

## II.  Procedural Due Process Claims

The Village Defendants argue that any "procedural due process claims should be dismissed because constitutionally adequate procedures were available to Plaintiff by way of the CBA's grievance-arbitration provision." Doc. 36 at 3. True enough, "[g]rievance procedures created by collective bargaining agreements can satisfy the requirements of due process for terminated employees." *Hudson v. City of Chicago*, 374 F.3d 554, 563 (7th Cir. 2004). But there is a dispute over whether the CBA in question was in effect when Matthews was terminated, and that dispute forestalls dismissal at the Rule 12(b)(6) stage, when all reasonable inferences must be drawn in Matthews's favor.

Matthews maintains that the CBA cited by the Village Defendants was effective only from "May 1, 2008 through April 30, 2011," Doc. 41 at 2, meaning that it "expired two years before" his termination, Doc. 43 at 1. In response, the Village Defendants point to Article XX of the CBA, which provides that "this Agreement shall remain in full force and effect after any

6

expiration date while negotiations or Resolution of Impasse Procedure are ongoing for a new agreement or any part thereof between the parties." Doc. 37-1 at 57; Doc. 48 at 1. They further argue that Matthews "tacitly admit[s] that a CBA was in effect at the time" by pleading that "he submitted two grievances seeking to redress his termination." Doc. 48 at 1-2; *see* Doc. 10 at ¶ 33 (where the amended complaint alleges that the Union Defendants submitted the grievances on Matthews's behalf). Indeed, the complaint cites extensively to the CBA provisions outlining the grievance procedures, Doc. 10 at ¶¶ 42-43, attaches those provisions as an exhibit, *id*. at pp. 49-56, and pleads that Local 3766's refusal to pursue "redress as provided for in the Collective Bargaining Agreement" left Matthews with no remedy, *id*. at ¶ 79.

Perhaps realizing the dissonance between his complaint and his argument opposing dismissal, Matthews moved to withdraw the portions of his complaint referring to the CBA. Doc. 44. That motion is denied. The court may consider the relevant CBA language because the operative complaint references and attaches it, and the court will not pretend that it does not exist. *See Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1113 n.1 (7th Cir. 2013). But given that it is unclear, at least on the pleadings, whether that CBA actually was in effect at the time of Matthews's termination, the court cannot conclude at this stage that the CBA's grievance process was available to Matthews. In so holding, the court acknowledges the provision stating that the CBA would remain in effect "while negotiations or Resolution of Impasse Procedure are ongoing." But it is plausible (if not terribly probable) that another CBA with different terms supplanted that CBA, and that is sufficient to deny dismissal of the procedural due process claims on the ground that a grievance procedure was available to Matthews.

Next, the Union Defendants contend that § 1983 does not apply to them because they are private actors who did not act under color of law. Doc. 25 at 4-5. This argument does not

persuade, at least at the Rule 12(b)(6) stage. In *Hallinan v. Fraternal Order of Police*, 570 F.3d 811 (7th Cir. 2009), the Seventh Circuit explained that "[p]rivate action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights." *Id*. at 815 (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). Because the complaint adequately alleges that DuVall and Local 3766 conspired with the Village Defendants to deprive Matthews of his property interest in his employment, the § 1983 procedural due process claim against them survives. *See Sneed v. Fox*, 2012 WL 246461, at *2 (N.D. Ill. Jan. 25, 2012) (denying a motion to dismiss a § 1983 claim against a non-state actor where the plaintiff sufficiently alleged that the defendant had conspired with the police chief to arrest him without probable cause).

## III. Duty of Fair Representation Claim

Matthews contends that the Union Defendants breached their duty of fair representation to him by failing to arbitrate his grievance. Although Matthews does not specify under which statute this claim is brought, the Union Defendants identify the Illinois Public Labor Relations Act ("IPLRA"), 5 ILCS 315/1 *et seq.*, and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as two possibilities. Yet they argue that this court lacks jurisdiction to hear an IPLRA claim and that they are not proper defendants under the LMRA because the Village is not an "employer" under that statute. Doc. 25 at 5-8. (The Union Defendants frame their LMRA argument as jurisdictional, but it actually presents a merits question. *See Int'l Union of Operating Eng'rs, Local 150 v. Rabine*, 161 F.3d 427, 429-31 (7th Cir. 1998) (holding that the presence of a statutory "employer" in an LMRA case concerns the merits, not subject matter jurisdiction).)

Matthews does not respond to these arguments, thereby forfeiting his fair representation claim. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument …."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted). This is so even though the forfeiture involves, at least in part, a question of subject matter jurisdiction. It is true that "[n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added, internal quotation marks omitted); *see also Travelers Prop. Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) ("Jurisdictional *objections* cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added, internal quotation marks omitted); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010) ("neither the parties nor their lawyers may waive arguments that the court *lacks* jurisdiction") (emphasis added). However, the *proponent* of subject matter jurisdiction, as with any party with the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Prop. Cas.*, 689

F.3d at 718 ("The court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists."); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice"); *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (same).

The Union Defendants are correct in any event. The Illinois State Labor Relations Board ("ISLRB") has exclusive jurisdiction over unfair labor practice actions brought under the IPLRA, and therefore any fair representation claim under that statute may not be heard by this court. *See Carver v. Nall*, 172 F.3d 513, 516 (7th Cir. 1999) ("[T]he ISLRB has exclusive jurisdiction to hear unfair labor practice grievances of Illinois state employees."); *Cessna v. City of Danville*, 693 N.E.2d 1264, 1269 (Ill. App. 1998) (holding that the ISLRB had exclusive jurisdiction over a city bus driver's claim against his union for breach of the duty of fair representation); *Johnson v. City of Chicago*, 2010 WL 3824115, at *3 (N.D. Ill. Sept. 22, 2010) ("[A] claim for unfair representation against a labor union is a claim within the jurisdiction of the Illinois Labor Relations Board; it is not a claim that plaintiffs can bring in this Court …."). Thus, the IPLRA claim is dismissed for lack of subject matter jurisdiction.

The LMRA authorizes suits for "violation[s] of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185. The statute incorporates the National Labor Relations Act's definition of "employer" to mean "any person acting as an agent or an employer … but shall not include the United States … or any State or political subdivision thereof." 29 U.S.C. § 152(2). Because the Village is a "political subdivision of the State of Illinois," Doc. 10 at ¶ 6, it is not an "employer" under the LMRA, which means that Matthews's fair representation claim falls outside the statute's scope. *See Strasburger v. Bd. of Educ.*,

*Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 359-60 (7th Cir. 1998) (affirming the dismissal of a fair representation claim against the union because the employer school board, as a political subdivision, was excluded from the LMRA's definition of employer); *Kirsch v. AFSCME Local 2645*, 2001 WL 1593140, at *1 (N.D. Ill. Dec. 13, 2001) ("[W]e think that it follows from the fact that a state-government employee cannot sue her employer under the LMRA for breach of a collective bargaining agreement that she cannot sue her union for failing to represent her adequately in her claim against the employer for breach of the agreement."); *see also Hamilton v. Evans*, 2004 WL 1368786, at *4 n.2 (N.D. Ill. June 17, 2004) (same); *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 104 (E.D.N.Y. 2004) ("The LMRA … does not vest federal district courts with subject matter jurisdiction over claims by public employees against their unions for breach of the duty of fair representation."). Because this flaw cannot be cured by repleading, the LMRA claim is dismissed with prejudice. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend where … the amendment would be futile.") (internal quotation marks omitted).

Accordingly, to the extent that Count V alleges a breach of the duty of fair representation, the IPLRA claim is dismissed for lack of subject matter jurisdiction while the LMRA claim is dismissed with prejudice.

### IV. Section 1981 and ICRA Claims

Hughes argues that the § 1981 claim should be dismissed because the statute does not create a private right of action against state actors. Doc. 36 at 7. The Seventh Circuit has held that "§ 1983 remains the exclusive remedy for violations of § 1981 committed by state actors." *Campbell v. Forest Pres. Dist.*, 752 F.3d 665, 671 (7th Cir. 2014), and the complaint alleges that Hughes acted "as an agent of the Defendant, the Village of Dolton," Doc. 10 at ¶ 5. But

11

although Matthews's § 1981 claim must be brought under § 1983, he was not required to cite § 1983 in his complaint. *See Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("The plaintiff is not required to plead … statutes, but merely to describe his claim briefly and simply."). Accordingly, the court will deem Matthews's § 1981 claim to have been properly brought under § 1983. *See Barrett v. Ill. Cmty. Coll. Dist. No. 515*, 2015 WL 4381218, at *3 (N.D. Ill. July 16, 2015). And because § 1983 claims brought by plaintiffs injured in Illinois are governed by a two-year statute of limitations, *see Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006), and because the wrongful acts alleged by Matthews occurred within that window, his claim is timely.

Hughes argues that he is not a proper defendant under the ICRA because the statute does not apply to individuals. Doc. 36 at 7. The ICRA provides that "[n]o unit of State, county, or local government in Illinois shall … subject a person to discrimination … on the grounds of that person's race." 740 ILCS 23/5(a)(1). Hughes is correct as the ICRA "provides a cause of action against only three potential parties: the State of Illinois, its counties, and its local governments." *Neuman v. United States*, 2007 WL 3407442, at *3 (S.D. Ill. Nov. 15, 2007); *see also Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 845 (N.D. Ill. 2013) (same). Accordingly, Count II is dismissed against Hughes to the extent it pleads an ICRA claim. Because this flaw cannot be cured by repleading, the ICRA claim is dismissed with prejudice. *See Gonzalez-Koeneke*, 791 F.3d at 807.

## Conclusion

The Union Defendants' motion to dismiss Count V is granted to the extent it alleges a breach of the duty of fair representation, and the Village Defendants' motion to dismiss Count II is granted as to the ICRA claim against Hughes. The IPLRA fair representation claim is

dismissed for lack of subject matter jurisdiction, and the LMRA fair representation claim and the ICRA claim are dismissed with prejudice.  The motions to dismiss otherwise are denied.  Matthews's motion to withdraw the portion of his complaint referencing the CBA is denied.

October 5, 2015

_____
United States District Judge